## MAGNOLIA COTTON OIL CO. v. CONTINENTAL OIL & COTTON CO.
### (No. 99–2930.)

(Commission of Appeals of Texas, Section A. April 7, 1920.)

**Sales ⚖81(1)—Requirement that buyer furnish empty cars "before expiration of contract time" construed.**

Where rules of cotton seed crushers' association, made a part of sales contract, required buyer to furnish seller with empty tank cars "before the expiration of the contract time" and required seller to load cars within 48 hours after delivery thereof, seller was liable for breach of contract upon refusal to load cars delivered before expiration of contract time of shipment, but within 48 hours thereof; buyer's failure to give seller 48 hours before contract time of shipment in which to load empty cars merely excusing seller from shipping at such time and before expiration of the 48-hour period following delivery of empty cars.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by the Magnolia Cotton Oil Company against the Continental Oil & Cotton Company. Judgment for defendant affirmed by Court of Civil Appeals (183 S. W. 10), and plaintiff brings error. Reversed, and rendered for plaintiff.

Kirby, Scarborough & Davidson, of Abilene, and Baker, Botts, Parker & Garwood, of Houston (W. A. Parish, of Houston, of counsel), for plaintiff in error.

Hardwicke & Chambers and J. M. Wagstaff, all of Abilene, for defendant in error.

SONFIELD, P. J. Suit by Magnolia Cotton Oil Company, plaintiff, against John Guitar, doing business under the name of Continental Oil & Cotton Company, defendant, to recover damages for breach of contract. On the trial judgment was rendered for defendant, which on appeal was affirmed by the Court of Civil Appeals. 183 S. W. 10.

The cause was tried under an agreed statement of facts, the material parts of which are as follows:

Plaintiff agreed to purchase from the defendant ten tank cars of cotton seed oil. The memorandum of sale, dated October 22, 1914, calls for "January shipment." The tank cars for shipping the oil were to be furnished by the buyer; the memorandum making no specific provision as to date of their delivery at seller's plant. The sale was made subject

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to the rules of Texas Cotton Seed Crushers' Association. The ·defendant's plant was at Abilene, Tex. Four cars were furnished, loaded, and shipped during the first half of January. One car arrived at Abilene on January 30th, was loaded, and shipped out. This car should have arrived on January 28th, but was delayed through no fault of the buyer. Of the remaining five tank cars contracted to be delivered, one reached Abilene on Friday, January 29th, at 9 o'clock a. m., and four arrived on Saturday, January 30th, at 3:50 o'clock a. m. These cars defendant refused to fill and deliver because they were not furnished in time to allow 48 hours in which to load and ship.

The rules of the Texas Cotton Seed Crushers' Association referred to in the contract, and .which relate to the subject-matter thereof, are, with the headings, as they appear in the rules, and copied into the agreed statement of facts, as follows:

### "General Rules.

"Rule 17, Sec. 1.—All offers, sales, or purchases of cotton seed products shall be understood, unless specified to the contrary, to be f. o. b. cars at the mill. Unless specially stated otherwise, oil shall be considered as sold loose and buyer shall furnish tank cars."

"Rule 19. *Time of Shipment.*—All trades in cotton seed products shall be for either immediate, prompt, or specified dates of shipment.

"(1) Immediate shipment shall be within five working days.

"(2) Prompt shipment shall be within ten working days.

"(3) Specified dates, according to contract.

"In all cases the bill of lading shall be evidence of the date of shipment," etc.—

### "Forwarding of Buyer's Tanks.

"Rule 22, Sec. 1.—In case the buyer furnishes tank cars, forwarding of the entire number of tank cars contracted for shall be made by the buyer as follows:

"(a) Quick forwarding of empty tank cars shall be within two working days, date of contract not included.

"(b) Immediate forwarding of empty tank cars shall be within five working days, date of contract not included.

"(c) Prompt forwarding of empty tank cars shall be within ten working·days, date of contract not included.

"(d) *Specified Forwarding.*—Tank cars shall be forwarded by buyer in such time that under the ordinary course of transportation they shall reach the seller before the expiration of contract time, and seller in all cases shall have up to forty-eight hours after delivery of each tank at destination in which to load and ship.

"(e) Relates to cars in case of quick, immediate, or prompt forwarding being delayed by railroad en route.

"(f) Relates to car being lost or disabled en route.

"(g) It is understood that the arrival of tank cars at a town where mill or refinery is located shall constitute delivery as above.

"Sec. 2.—It is understood that this entire rule refers to the forwarding of empty tank cars by the buyer, and does not refer to the movement of the oil by the seller."

### "Shipment of Oil or Soap Stock in Buyer's Tanks.

"Rule 23, Sec. 1.—Specified shipments of oil or soap stock in buyer's tanks shall be made within the time specified in the contract.

"Sec. 2.—It is understood that for any of the above shipments of oil or soap stock in buyer's tanks the tank cars shall be forwarded · by buyer in such time that under the ordinary course of transportation they shall reach the seller in time to allow him to make delivery as per contract, and seller shall have up to forty-eight hours of delivery of tank or tanks in which to load and ship."

### "Failure to Forward Tank Cars by Buyer.

"Rule 25, Sec. 1.—Failure on the part of buyer to forward cars in the proper time and give due notice thereof shall entitle the seller, at his option, to cancel the contract, or to exact demurrage at the rate of two dollars per tank car for every day's delay, or, upon notice, the right to sell the oil for the account of the buyer within forty-eight hours, Sundays and legal holidays not included, through any cotton oil broker in good standing, at the best obtainable price, holding the buyer for losses; sale to be for earliest obtainable shipments, original buyer to pay demurrage for all delays. But in case of forwarding tanks for specified forwarding (paragraph d, rule 22) when it is shown that the tank cars were forwarded in due time as above specified, and delayed en route, the seller must fill them, charging the buyer two dollars per day per tank car as above specified, and the buyer must accept them under the contract."

### "Buyer's Tanks at Mill.

"Rule 27, Sec. 1.—Sellers shall in all cases load tank cars within forty-eight hours of arrival at destination. In case the seller does not load the tank cars within forty-eight hours after arrival,·he shall pay the buyer two dollars for each tank car for every day's delay beyond forty-eight hours. (In this case 'destination' means 'mill' when within free switching limits of the town where mill is located.) Or if at the expiration of forty-eight hours after the expiration of contract time of shipment the tank cars have not been loaded, the buyer shall have the right to cancel or purchase the quantity of oil due on contract for account of seller at lowest obtainable price, through any cotton oil broker in good standing, holding the seller for the loss sustained.

"Note.—It must be understood that this rule is intended only for the protection of·the buyer after his tank cars have arrived at the mill, and in no case shall it be taken to extend the · time of delivery under the contract, or to limit or interfere wtih the measure of damages that may arise under the contract."

The only question for decision is: Did the plaintiff furnish the tank cars in which the oil was to be shipped within the proper time?

The contention of the parties, as stated in the agreed statement of facts, is as follows:

"By defendant: That the tanks should arrive in time to give defendant two entire working days before the expiration of the month of January in which to load and ship the tanks; plaintiff contending that, if tanks arrived before midnight of the last day of January, defendant was bound to fill the same, and that defendant would have, under the contract, forty-eight hours after tanks so arrived in which to fill and ship."

The contract calls for "January shipment." There is agreement between the parties that, unmodified by the rules, a "January shipment" means a shipment made during the month of January. The buyer was to furnish the tank cars. Time for delivery of the cars to the seller not being specified in the contract, recourse must be had to the rules.

Rule 22 is captioned "Forwarding of Buyer's Tanks." It deals exclusively with the duty of the buyer in reference to the delivery of the cars. Upon its proper construction depends the solution of the question before us. Section D of the rule pertains to the forwarding of the cars for the character of shipment involved herein. Under this section, the cars must be forwarded in such time that "they shall reach the seller before the expiration of the contract time." To determine the time for delivery, it is only necessary to ascertain the meaning of the term "contract time" as used in this section. The contention of plaintiff is that it means the contract time of shipment. In the argument filed in this court by defendant, this interpretation is recognized as correct. Defendant, after quoting section D of rule 22, says:

"The part of rule 22 quoted above provides that the cars shall be forwarded so that they shall reach the seller before the expiration of the contract time—that is, before the expiration of the month of January—but it also provides in the next line that the seller shall have 48 hours in which to load and ship."

Independent of the contention of the respective parties, we think the reasonable and proper interpretation of the term, in the light of all the rules, is the contract time of shipment. So interpreted, the rule is clear, and the time for delivery undoubted. The buyer must forward the cars in such time that they shall reach the seller before the expiration of the contract time of shipment, that is, in this case, before the expiration of the month of January.

The 48 hours given the seller in which to load and ship begins with the delivery of the cars. It cannot be construed as limiting the time expressly and specifically given the buyer in which to make delivery. There is no provision that the seller shall be allowed 48 hours before the expiration of the contract time of shipment in which to load and ship,

nor is such a provision found in any rule. On the contrary, in every rule wherein the provision appears the 48-hour loading time begins with the delivery or arrival of the cars.

Rule 27 is captioned "Buyer's Tanks at Mill." Rule 22 concerns the buyer's duty in delivery of the cars, while rule 27 deals with the duty of the seller with reference to the cars upon their delivery. Under section 1 of rule 27, the seller must load the cars within 48 hours of arrival. Section 2 provides a penalty in the event of failure to load within 48 hours of arrival. Section 3 gives the buyer the right of cancellation if the cars are not loaded "at the expiration of 48 hours after the contract time of shipment." Under rule 22, as we construe it, the buyer is given up to the expiration of the contract time of shipment in which to deliver the cars, and the seller has 48 hours after delivery in which to load and ship. Section 3 of rule 27, permitting cancellation by the buyer only upon the expiration of 48 hours after the contract time of shipment, involves the right of the seller to load within that period. The buyer, under rule 22, can deliver at any time up to the expiration of the contract time of shipment. The seller, under rule 27, must load within 48 hours after delivery. Failing in this, he is penalized under the rule, and may be further liable to the buyer for damages, in view of the note appended to rule 27. If delivery is not made, as in this case, until within 48 hours before the expiration of the contract time of shipment, the seller is given 48 hours thereafter in which to load and ship; this by clear statement in rule 22 and by a conclusive inference from section 3 of rule 27. In such case the seller is obligated to load and ship, and the buyer to receive, even though the shipment is not within the time specified in the contract. The seller being given 48 hours after the expiration of the contract time of shipment in which to load and ship, and the buyer being compelled to accept the shipment made within that time, it is clear that the seller cannot claim a forfeiture of the contract for a failure on the part of the buyer to forward the cars in such time as to make delivery to the seller 48 hours before the expiration of the contract time of shipment.

Rule 25 gives the seller the right of cancellation in the event of failure on the part of the buyer to forward cars in the proper time, which, under the construction contended for by defendant, would be in such time as to reach the seller 48 hours *before* the expiration of the contract time of shipment; while under rule 27 the right of cancellation is denied the buyer until the expiration of 48 hours *after* the contract time of shipment. If the proper time of forwarding the cars be held a forwarding in time to reach the sell-

er before the expiration of the contract time of shipment, the rights of the buyer and the seller as to cancellation are more nearly equal and reciprocal.

Much reliance is placed by defendant upon rule 23, and the Court of Civil Appeals gave this rule controlling effect. The rule is captioned "Shipment of Oil or Soap Stock in Buyer's Tanks," and deals with the seller's duty in reference to shipments in buyer's tanks after the same have been delivered.

The contract or memorandum of sale called for "January shipment." Section 1 of rule 23 makes it the duty of the seller to make shipments in buyer's tanks within the time specified in the contract. Such shipment within the specified time would, of course, be contingent upon a delivery of the cars by the buyer within time to permit such shipment. To hold the seller to shipment within the time specified in the contract, under the provision of section 2 of rule 23, the cars must be forwarded by the buyer so as to reach the seller in time to allow him to make delivery within the contract time, allowing the seller up to 48 hours of delivery of cars in which to load and ship. No liability against the seller could be predicated upon a failure to ship within the contract time, if the cars were not furnished by the buyer in time to make such shipment. But this does not relieve the seller of the duty of loading and shipping in the event the cars are delivered at any time before the expiration of the contract time of shipment. The right to so deliver is given the buyer in plain terms under rule 22; and under the same rule the seller is given 48 hours after delivery of the cars in which to load and ship. If, through the exercise of the right given the buyer under rule 22, shipment cannot be made within the time specified in the contract or memorandum, this would relieve the seller from liability for failure to so ship within the time, and would make it incumbent upon the buyer to accept such shipment.

In the agreed statement of facts it is provided:

"If any of said cars were delivered within the contract time of shipment, then for each of said five cars that were delivered to defendant within proper time, under the terms of the contract, plaintiff, in this action, is entitled to recover $1,320."

We conclude that each of the five cars was delivered within proper time, and plaintiff is entitled to recover the agreed amount of the damages sustained, being the sum of $6,-600, together with interest at the rate of 6 per cent. per annum from February 1, 1915, the date of the breach of the contract.

We are of opinion that the judgment of the Court of Civil Appeals should be reversed, and judgment here rendered for plaintiff in error in the above amount.

PHILLIPS, C. J. In the above cause the judgments of the Court of Civil Appeals and District Court will be reversed and judgment rendered for plaintiff in error for the amount stated in the opinion of the Commission of Appeals.